350 So.2d 656 (1977)
STATE of Louisiana
v.
Lewis KELLOGG.
No. 59401.
Supreme Court of Louisiana.
September 19, 1977.
Rehearing Denied October 21, 1977.
*657 J. Minos Simon, J. Minos Simon, Ltd., Lafayette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., Byron P. Legendre, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Lewis Kellogg was charged with the aggravated battery of Even St. Julien, Jr. on March 30, 1974 in violation of R.S. 14:34. After trial by jury defendant was found guilty as charged on July 22, 1976. On December 9, 1976 defendant was sentenced to four years at hard labor. The sentence was suspended on the condition that defendant serve two months in parish jail and be placed on active supervised probation with special conditions for four years.
The victim, Even St. Julien, Jr., and his wife testified as follows: at approximately two o'clock in the morning on March 30, 1974 they were driving in the parking lot of Sambo's Restaurant in Lafayette looking for a place to park. They waited while the vehicle driven by defendant pulled out of a parking space. After he had pulled out of the slot Kellogg allegedly made some inaudible remarks to St. Julien. After St. Julien asked his wife if she knew who was driving the other vehicle, defendant stepped out of his car and fired a shot at Mr. St. Julien striking him in the right ear and right arm. St. Julien chased the car on foot and threw a hatchet at defendant's car which made a small hole in the car. The St. Juliens chased defendant in their car until they got his license number and then reported the incident to the police.
Defendant admitted that a confrontation took place on the night in question and that his gun was fired. However, he testified that the gun was discharged accidentally as he defended himself. He said that the St. Juliens' vehicle pulled behind him and blocked his exit from the parking space. He asked the occupants of the St. Julien vehicle to move their car and Mr. St. Julien allegedly spoke to defendant in a rough tone of voice and made racial slurs (Mr. St. Julien is black; defendant is white). Defendant decided to attempt to calm St. Julien before he entered the restaurant in his upset frame of mind. Defendant further testified that when he approached the St. Julien vehicle, Mr. St. Julien bent over as if to grab a weapon of some sort from under the seat. At this point defendant attempted to defend himself by hitting St. Julien on the head with the butt of the derringer he was carrying in his pocket, but the gun accidentally discharged. Defendant stated that he drove away to avoid further conflict and to report the incident to the police.
Since the only eyewitnesses to the incident to testify were the victim, his wife and the defendant, it is apparent that credibility of the witnesses was of utmost importance in determining the true state of facts. Although defendant may have been wrong to approach the St. Julien vehicle initially, the defendant's testimony to the effect that St. Julien appeared to reach for a weapon under the seat coupled with the St. Julien's testimony that the hatchet was on the rear floor under the front seat (as well as previous out-of-court testimony which allegedly put the hatchet on the front seat between the St. Juliens), presented a close jury question on the veracity of defendant's version of the incident and the reasonableness of defendant's "defensive" actions. Therefore, defense counsel attempted to test the St. Juliens' credibility and bias by questioning the witnesses about a civil suit Mr. and Mrs. St. Julien had filed against defendant arising out of the incident in question. The State objected to this line of inquiry and the objection was sustained. Out of the presence of the jury defense counsel explained that in order to show bias and interest, he desired to bring out that Mr. St. Julien had filed a suit for $120,000 in damages, in which Mrs. St. Julien was also seeking damages in the amount of $60,000. The judge's ruling forms the basis for Assignment of Error No. 2 which we find has merit.
R.S. 15:492 provides:
"When the purpose is to show that in the special case on trial the witness is biased, *658 has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admits such fact, any other witness may be examined to establish the same." (Emphasis added).
Our jurisprudence permits full cross-examination in order to expose any bias or interest of the witness which might influence his perceptions or color his testimony. E. g. State v. Robinson, 337 So.2d 1168 (La.1976); State v. Lewis, 328 So.2d 75 (La.1976). Specifically our cases have permitted counsel to inquire into the existence of a civil suit involving the witness or the possibility of civil liability on the part of the witness when such facts indicate that the witness has an interest in the criminal case or is otherwise not totally impartial. State v. Nolan, 341 So.2d 885 (La.1977); State v. Randolph, 334 So.2d 687 (La.1976); State v. White, 206 La. 744, 20 So.2d 10 (1944). The broad right to impeach the witness for bias or interest is dictated not only by R.S. 15:492 but also by the statutory right to full cross-examination (R.S. 15:280) and the constitutional right of confrontation. La. Const. Art. I, § 16; U.S.Const., Amend. VI; Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
In the instant case the State argues that there was no showing that the St. Juliens filed the criminal complaint in order to aid their civil suit. However, this argument assumes that the existence of the suit reflects upon the witness' credibility only insofar as a conviction in the criminal case could possibly further the civil claim. But R.S. 15:492 provides that any fact which tends to show bias, interest or corruption should be admitted so that the jury may accord that fact the weight they deem appropriate. It is the possibility of gain or loss dependent upon the witness' testimony which reveals partiality and interest. Thus, defendant is entitled to have the jury consider the fact that the testimony of the St. Juliens might have been colored because their testimony could affect the merits of their civil claim. The fact that the St. Juliens could possibly damage themselves by testifying to facts inconsistent with the factual basis of the civil claim reveals that they might have a motive to falsify, or that their testimony may not be wholly correct. Since the evidence of the existence of the suit may tend to show bias or interest, it was evidence which the jury was entitled to consider. Due to the close factual dispute and the limited number of eyewitnesses, we cannot say that the omission of this important evidence did not substantially prejudice the accused.
For the foregoing reasons, the conviction and sentence are reversed and the case is remanded for further proceedings not inconsistent with the views here expressed.