645 So.2d 757 (1994)
STATE of Louisiana
v.
Jerry BERRY.
No. 94-KA-249.
Court of Appeal of Louisiana, Fifth Circuit.
October 25, 1994.
*758 Bruce G. Whittaker, Gretna, for defendant/appellant.
John M. Mamoulides, Dist. Atty., Dorothy A. Pendergast, Michele R. Morel, Gretna, for the State.
Before GRISBAUM, WICKER and GOTHARD, JJ.
WICKER, Judge.
Defendant, Jerry Berry, was charged by bill of information with violation of La.R.S. 14:34.1, second degree battery. He entered a plea of not guilty. After trial by a six-person jury, he was found guilty as charged. The trial court sentenced him to two years at hard labor. The defendant now appeals, urging two assignments of error. We reverse and remand for new trial.

FACTS
The defendant and the victim, Diana Gamponia, had known each other for several years, had dated for seven or eight months and had lived together, but had broken up several weeks before the incident herein. The victim was injured when she fell out of a moving vehicle being driven by the defendant. The dispute at trial was whether the defendant punched the victim and shoved her out of the moving vehicle, or whether she voluntarily jumped out and thereby sustained all her injuries.
Gamponia testified that on February 16, 1993, she was staying at her brother's house and had gone to Berry's house to get her furniture. Berry asked her to take a ride in his truck to discuss their relationship. During the ride she told Berry that she didn't think they "could make it" and felt it was time she got out. He "got all crazy" and started punching her on the left side of her face, still driving the truck. She begged him to stop and let her out, but he refused to stop, so she opened the passenger door and he grabbed her and shoved her out of the *759 moving truck. She denied that she jumped out on her own.
Gamponia testified that Berry took her to her brother's home afterward and then he left; he later came back, at which time the police arrested him. She said she declined treatment after the incident because she was afraid, but she had her brother photograph her injuries the next day. Those photographs, introduced at trial, show that her face was very puffy and bruised, and that her left eye was blackened and extremely swollen. She stated she plans to have plastic surgery to get rid of scars remaining on her face.
On cross-examination Gamponia admitted that she had gotten out of the car at the levee before the incident because Berry was yelling at her, but said that he had persuaded her to get back in. She denied telling anyone, including defendant's father, that she did not want to prosecute defendant.
Gretna Police Deputy John Meeks responded to an emergency call and investigated the incident immediately after it occurred. When he arrived at a service station near where the victim was seen falling from the truck, the people were gone from the scene. About twenty minutes later, he received another call and located the victim at an address in Gretna. He took a written statement from Gamponia and he subsequently arrested the defendant. Meeks said he observed that the victim's left eye was swollen shut and she had lacerations and contusions about her face and body. He verified at trial that the photographs in evidence accurately represented her condition.
Jerry Berry testified that at the time of the incident, he and Gamponia were breaking up for the second or third time and had been apart for about three weeks. He had gone to see her by prior arrangement because he wanted to talk things over. They decided to take a ride to talk, but during the ride Gamponia insisted that Berry take her home. He became angry and they argued. While he was driving her home, she told him to stop and threatened to jump out if he did not do so. Berry testified that he told her, "If you're stupid enough to jump out the truck, go for it," although he had not really believed she would jump from the moving truck. He denied that he punched her or pushed her from the vehicle; he said that he was physically unable, while driving the truck, to reach the victim and push her.
The defendant testified further that after the victim jumped, he stopped and ran to pick her up. She told him she wanted to go home and he helped her back into the truck. When they arrived at her brother's house, she ran from the truck screaming and crying.
David Olivare, the owner and operator of the service station near where the incident occurred, testified he saw the truck coming down the street. He saw the passenger door open and a woman come out, hit the ground and roll on the street. It appeared to him that the woman stepped out of the truck. He did not see defendant lean over or push the victim from the truck. However, Olivare admitted he could not say that the victim was not pushed from the truck.

ASSIGNMENT OF ERROR NUMBER ONE

A. Did defense counsel fail to make a contemporaneous objection?
Defendant asserts the trial court erred in prohibiting defense counsel from questioning the victim concerning her retaining an attorney in an apparent effort to make a claim for damages in a civil lawsuit arising out of appellant's alleged offense. In this assignment defendant argues that the trial court erred in prohibiting defense counsel from asking the victim questions on cross-examination about her bias or interest, specifically her filing of a civil suit against defendant for her injuries.
The state contends that defense counsel failed to object to the trial court's ruling after the judge sustained the state's objection to the question, and that this failure to object constitutes a failure to make a contemporaneous objection which precludes the defendant from raising this error on appeal.
During cross-examination of Gamponia, defense counsel asked her whether she had retained an attorney. At that point the assistant district attorney objected and asked *760 that the jury be removed. The prosecutor then stated that the Code of Evidence prohibits questions concerning whether a party has retained an attorney and requested an admonition to the jury, arguing that the question was prejudicial.
Defense counsel informed the judge, "Your Honor, that question went to [sic] for interest, bias, in this lawsuit." However, the judge instructed the defense to refrain from questioning the victim about her attorney and subsequently admonished the jury to disregard the question. After the court's ruling defense counsel made no further objection or argument.
La.Code Crim.P. art. 841(A) states:
A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
If the defendant fails either to object contemporaneously to action of the trial court, or to make known to that court the action which he desires the court to take, he waives his right to attack the judgment or conviction on grounds of these errors or irregularities. State v. Charles, 326 So.2d 335, 336 (La.1976); State v. Simms, 381 So.2d 472, 476-77 (La.1980). Further, where the defense counsel acquiesces when the court sustains a state's objection to examination of a witness, that objection is waived. State v. Huizar, 414 So.2d 741, 749 (La.1982). The failure of a defendant to enter a contemporaneous objection to the trial court's ruling constitutes a waiver of that objection. State v. Huizar, supra.
However, the Louisiana Supreme Court has held that a defense attorney's repeated efforts to offer testimony over prosecution objections were sufficient to amount to a contemporaneous objection, where defense counsel asserted the grounds for admissibility, despite the fact that the grounds were not clearly articulated. State v. Shoemaker, 500 So.2d 385, 388 (La.1987). Citing State v. Jones, 332 So.2d 267 (La.1976), the Shoemaker court stated, "There is no `magic word' formula necessary for remarks to constitute an objection.... Rather, it is sufficient that a party, at the time of the ruling, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, together with the grounds therefor." Id.
Although defense counsel said nothing after the ruling, we cannot say she acquiesced in the ruling or waived an objection, considering her statement to the judge of her reasons for pursuing that line of questioning. In light of the language and reasoning of Shoemaker and Jones, supra, we find that defense counsel's argument was sufficient to constitute a contemporaneous objection.
Accordingly, we address the merits of Assignment of Error No. 1.

B. Did the trial judge commit reversible error?
Louisiana Code of Evidence article 607 provides, in pertinent part:
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
Code Evid. art. 607 was based in part on former La.R.S. 15:492, which provided:
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless *761 he distinctly admits such fact, any other witness may be examined to establish the same.[1]
Further, La.Code Evid. art. 403 provides:
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
In State v. Kellogg, 350 So.2d 656, 658 (La.1977), our supreme court held that where evidence of the existence of a lawsuit may tend to show interest or bias, it is evidence which the jury is entitled to consider, particularly where there is a close factual dispute and a limited number of eye witnesses:
Our jurisprudence permits full cross-examination in order to expose any bias or interest of the witness which might influence his perceptions or color his testimony.... Specifically, our cases have permitted counsel to inquire into the existence of a civil suit involving the witness or the possibility of civil liability on the part of the witness when such facts indicate that the witness has an interest in the criminal case or is otherwise not totally impartial.... The broad right to impeach the witness for bias or interest is dictated not only by R.S. 15:492 [La.Code Evid. art. 607] but also by the statutory right to full cross-examination (R.S. 15:280) and the constitutional right of confrontation. La. Const. Art. I, § 16; U.S. Const. Amend. VI; Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
In State v. Nolan, 341 So.2d 885, 890 (La. 1977), the supreme court ruled that the trial court erroneously prohibited defendant from questioning the witness about the possibility of a civil suit being lodged against him in connection with an incident which resulted in the criminal charges. The court noted, "Counsel's proposed inquiry was intended to show that [the witness's] testimony was biased or that he had an interest in his asserted version of the facts, and under this provision [La.R.S. 15:492] the trial court should have allowed cross-examination on the subject of his potential civil liability."
In State v. White, 206 La. 744, 20 So.2d 10, 13 (1944), the district attorney was properly allowed to question a witness about possible liability, "because the state was entitled to show the jury the possible interest the witness had in the outcome of the trial, in order to affect his credibility."
However, in State v. Randolph, 334 So.2d 687 (La.1976), the supreme court found no reversible error in the trial court's prohibiting defense counsel from questioning the witness about a civil suit, because no prejudice could have resulted to the defendant Randolph from the court's refusal to admit the evidence, which was relevant only to show motive in having a co-defendant prosecuted, and was not relevant to the defendant-appellant. 334 So.2d at 691.
Similarly, in State v. Quatrevingt, 617 So.2d 484 (La.App. 4th Cir.1992), the defendant in a first degree murder trial contended that he should have been allowed to elicit information about a civil suit in order to show bias on the part of the victim's mother and father. He argued that the victim's parents had a financial stake in the outcome of his trial because the civil suit was totally dependent upon his being found guilty, and that should have been disclosed to the jury. The court of appeal found that during the trial the defense had been allowed to establish the existence of the million-dollar lawsuit filed by the victim's parents against defendant and the apartment complex at which the murder occurred. The appellate court held, "[T]he existence of the lawsuit was sufficient to show possible bias on the part of the victim's parents, and any further questioning about the details of the lawsuit would be marginally relevant to the case," and concluded the trial court did not err. 617 So.2d at 495.
In State v. Creel, 508 So.2d 859 (La.App. 5th Cir.1987), writ denied, 532 So.2d 171 (La.1988), this court concluded that the trial court had not erred in disallowing an inquiry *762 into the victim's civil action because the omission was not prejudicial, since the evidence was totally uncontradicted.
The prosecution's objection to the defense question was based on Louisiana Code of Evidence article 415, added by 1993 acts, No. 626, which states:
In any criminal proceeding, the act of contacting or retaining an attorney shall not be admissible against any individual or entity, unless such act falls within an established exception for crime or fraud.
The interpretation of this article was addressed in Handbook on Louisiana Evidence Law, 1994 Edition, Pugh, Force, Rault and Triche, 1994 Authors' Notes, p. 322, as follows:
(1) This provision was added by 1993 Acts, No. 626. There is no comparable provision in the Federal Rules of Evidence. It appears to be based on a recommendation by the National Association of Criminal Defense Lawyers, Fact Sheet, Statutory Privileges (1993). The language employed seems, however, overbroad, and may mislead courts and practitioners into applications beyond its intended thrust. See Authors' Notes to Arts. 412.1, 413, and 414. The clearest thrust of this Article is to prevent an inference that the accused is guilty since prior to his arrest he consulted with an attorney. But presumably the legislature did not intend to preclude evidence of retaining an attorney in the murder trial of a disgruntled client now charged with killing the attorney who had earlier represented him. In the opinion of the authors, the Article's scope should be generally limited to its intended purpose as with other provisions in the Code. See for example the limitations placed upon the scope of Articles 404(B)(1) and 407-409. [Emphasis added.]
We agree that the article's scope should be limited to questions that imply that a witness consulted an attorney because he or she was guilty of crime. We do not believe this article was intended to prohibit questioning of a witness about matters concerning interest or bias, such as filing of a lawsuit against the accused.
We find the instant matter is similar to the Kellogg case, in that the testimony of the defendant and the victim is in direct conflict on the facts of the alleged offense and there are no other eyewitnesses to the events inside the defendant's truck before the victim was injured. In light of the jurisprudence allowing broad rights to cross-examination and impeachment, the trial court erred in prohibiting defendant from cross-examining the victim about her retention of an attorney.
We realize that the trial court's ruling did not expressly prohibit testimony about a civil suit or the possibility of a lawsuit by the victim against defendant for her injuries. Nevertheless, given defense counsel's explanation of the purpose for her line of questioning and the trial court's statement of its ruling, we do not believe defense counsel was required to ask the victim specifically whether she was filing a civil lawsuit against defendant. The trial court's ruling was broad enough to prohibit questions about a lawsuit against defendant. Therefore, the trial court erred in its ruling.
The denial of the right of effective cross-examination is subject to a harmless error analysis, however. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). (See, e.g., Randolph, Quatrevingt and Creel, supra). In examining for harmless error, an appellate court must look at several factors:
The correct inquiry is whether assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of the cross-examination otherwise permitted, and, of course, the *763 overall strength of the prosecution's case. * * *
State v. Sherman, 630 So.2d 321, 324-325 (La.App. 5th Cir.1993), citing Delaware v. Van Arsdall, supra.
Scrutinizing the facts in this case in light of those standards, we conclude that the failure to permit the testimony was reversible error. Gamponia's testimony was crucial to the prosecution's case; her testimony was not cumulative, because the only eyewitnesses were she and the defendant; except for her bruises and swollen left eye, there was no other evidence which corroborated her testimony as to defendant's actions while she was in the truck with him; the trial judge's ruling did not permit defense counsel further latitude in questioning for bias or interest; and the prosecution's case for second-degree battery rested almost entirely on the credibility of Gamponia.
We cannot say how the jury would have judged the credibility of the witnesses, had the testimony been allowed, or whether defendant was prejudiced by the omission of this evidence. This case is distinguishable from Randolph, Quatrevingt, and Creel; rather, it is like Kellogg, in which the omission was found to be prejudicial. In light of this error, and the possibility of prejudice to defendant, we conclude we must reverse the conviction and remand for a new trial.
In light of our ruling we need not address the second assignment of error.

DECREE
For the foregoing reasons, the defendant's conviction is reversed and the matter is remanded for further proceedings in accordance with the views expressed in this opinion.
REVERSED AND REMANDED.
NOTES
[1] La.R.S. 15:492 was repealed by Acts 1988, No. 515, Section 8, effective January 1, 1989, which enacted the Louisiana Code of Evidence.