715 So.2d 157 (1998)
STATE of Louisiana
v.
Robert SHANKS.
No. 97 KA 1885.
Court of Appeal of Louisiana, First Circuit.
June 29, 1998.
*158 Doug Moreau, District Attorney, Baton Rouge, for Appellee State.
William D. Dyess, Many, for Defendant Appellant Robert Shanks.
Before CARTER and FITZSIMMONS, JJ., and CHIASSON, J. Ad Hoc.[1]
FITZSIMMONS, Judge.
Defendant, Robert Shanks, was charged by grand jury indictment with the second degree murder of John Charrier, a violation of La. R.S. 14:30.1. Defendant pled not guilty. Defendant's first jury trial ended in a mistrial, when the jury was unable to reach a verdict. At a second jury trial, defendant was found guilty as charged. The trial court sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension. Defendant has appealed, urging six assignments of error.
On the night of August 14, 1995, defendant shot the victim in the right hip with a 12 gauge shotgun, while the victim was exiting the door of defendant's mobile home onto the *159 front porch. In response to an emergency 911 call reporting the shooting, law enforcement officers from the East Baton Rouge Parish Sheriff's Office and emergency medical personnel went to defendant's home. Defendant was taken into custody and advised of his Miranda rights. The victim was taken to the hospital and underwent a surgical operation. About a week later, the victim was discharged from the hospital and went home. Thereafter, the victim was readmitted to the hospital, where he died on September 4, 1995, from pulmonary embolus, secondary to the gunshot wound.

ASSIGNMENT OF ERROR NO. 1:
In this assignment, defendant contends the evidence was insufficient to prove second degree murder. Specifically, he argues that the state failed to prove he shot the victim with the specific intent to kill or inflict great bodily harm required for a second degree murder. He asserts his efforts following the shooting in administering pressure to the victim's wound to stop bleeding, the fact that he did not re-load his shotgun and shoot the victim again, and his statement to Deputy Boucher that he did not believe the victim's wound to be serious, negate the existence of the requisite specific intent. He submits the shooting was possibly accidental; and, thus, the reasonable hypothesis of innocence that he accidentally discharged the weapon was not excluded. While maintaining that the killing was not a manslaughter, defendant asserts it was a manslaughter at most. Defendant argues that the victim's actions immediately preceding the shooting may have been sufficient provocation to deprive defendant of his self-control and cool reflection without there having been time for his blood to have cooled, rendering the killing one in sudden passion or heat of blood. Alternatively, defendant asserts that this court may find the evidence supports a manslaughter, based on the shooting having occurred while he was engaged in the illegal use of a weapon in violation of La. R.S. 14:94.
In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also La.Code Crim. P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
Second degree murder is defined, in pertinent part, in La. R.S. 14:30.1(A)(1) as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm...." Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent need not be proven as a fact and may be inferred from the circumstances present and the actions of the defendant. State v. Wisinger, 618 So.2d 923, 931 (La.App. 1st Cir.), writ denied, 625 So.2d 1063 (La.1993). Specific intent is a legal conclusion to be resolved ultimately by the trier of fact. State v. Lewis, 525 So.2d 215, 217 (La.App. 1st Cir.), writ denied, 531 So.2d 469 (La.1988).
Manslaughter is defined, in pertinent part, in La. R.S. 14:31(A) as:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had *160 actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; ....
Illegal use of a weapon (the offense relied upon under a theory of manslaughter pursuant to La. R.S. 14:31(A)(2)(a)) is defined, in pertinent part, in La. R.S. 14:94(A) as:
... the intentional or criminally negligent discharging of any firearm ... where it is foreseeable that it may result in death or great bodily harm to a human being.
"Heat of blood" and "sudden passion" are not elements of the offense of manslaughter but are factors in the nature of mitigating circumstances that may reduce the grade of homicide. State v. Tompkins, 403 So.2d 644, 648 (La.1981); State v. Riley, 91-2132, p. 10 (La.App. 1st Cir. 5/20/94), 637 So.2d 758, 763. Provocation is a question of fact to be determined by the trier of fact. State v. Riley, 91-2132 at p. 10, 637 So.2d at 763. Thus, the issue on appeal is whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the mitigating factors were not established by a preponderance of the evidence. State v. Lombard, 486 So.2d 106, 111 (La.1986).
Officer Bruce Simmons was the first officer to arrive at defendant's trailer in response to the 911 call. As he approached the trailer, he saw two subjects on the porch. Defendant was beside the victim, who was lying on the floor. Defendant appeared to be actively trying to apply pressure to the victim's wound. Simmons asked who the shooter was. Defendant answered that he was the shooter and that there had been an altercation inside the trailer. Simmons did not ask defendant if the shooting was accidental, and defendant did not tell Simmons that it was. At the scene, defendant cooperated with Simmons and did what Simmons told him to do. Simmons observed that defendant (who was handicapped from a vehicular accident) was able to get up and move around, but the victim did not appear to be able to do the same.
Corporal Karl Kretser joined Simmons at defendant's trailer about a minute after Simmons' arrival there. When Kretser walked up to the porch where Simmons was standing and asked what had happened, defendant stated he had shot the victim. Kretser read defendant his constitutional rights. Crime scene photographs were taken before anything in the trailer was touched or moved.
Deputy Joseph Bush patted defendant down and found a live 12 gauge shotgun slug round in defendant's pants pocket. Bush took defendant into custody and transported him to the central substation.
Consistent with crime scene photographs, Kretser testified there were two doors leading from inside the trailer to the porch where the victim was lying. From outside, both doors were hinged on the right hand side. The inner door opened to the inside of the trailer and the outer door opened onto the porch.[2] There was damage from the shotgun blast to the wall of the interior of the trailer and the metal latch plate on the door frame. The crime scene photographs depict the hole in the wall and damage to the door frame as being about at mid-point or lower mid-point between the top and bottom of the frame. The inner door was apparently open at the time of the shooting. Kretser stated there was no damage to either door and indicated the reason the outer door was not damaged was because it too had to have been open when the shot passed through the door frame before striking the victim. Kretser stated that he looked through the hole in the wall from the outside to see if there was a direct line through the hole to the chair where defendant stated he was seated at the time of the shooting. Kretser testified he could see directly back to the chair. According to *161 Kretser, the victim had to have been outside the doorway when he was shot.
At the central substation after defendant was again advised of his constitutional rights, defendant made a statement to Kretser and Sgt. Ron Boucher. The substance of the statement related through Boucher's testimony, consistent with Kretser's testimony, revealed the following. Defendant and the victim had known each other for many years and were friends. Defendant had been purchasing marijuana in one ounce quantities from the victim. At about 8:00 p.m. on the night of the shooting, the victim arrived at defendant's home to collect one hundred dollars defendant owed him for a prior purchase of marijuana. When the victim entered the trailer, the victim began demanding the money. An argument ensued. The victim struck defendant twice, once on the left side of the cheek and once on the left side of the neck.[3] The victim turned to walk out the door. During his statement, defendant gritted his teeth, began pounding on the table and said: "[N]o mother fucker is going to come in my house and hit me." Continuing with his statement, defendant disclosed that he picked up the shotgun from the side of the chair in which he was seated and fired the gun one time at waist level in the direction of the victim's backside as the victim was exiting the trailer. The victim hollered to defendant that he was hit and to call 911. Defendant either called or had someone call and applied pressure to the victim's wound. Defendant, at no time, said the shooting was an accident. According to Boucher, after defendant gave the statement, he asked Boucher to go outside with him so defendant could smoke a cigarette. Boucher acceded to the request. Defendant began engaging in a casual conversation, stating that he and the victim were real good friends, that he felt the wound was not life-threatening, and that after the victim returned from the hospital they would talk, work things out, and the victim would drop the charge against him.
Pat Lane, an expert in firearms, their workings and functions and firearms ammunition, examined the single shot break action 12 gauge shotgun used to shoot the victim. Lane explained that to fire the gun, a shell must be placed in the weapon, the gun must be manually cocked by pulling back the hammer spur, and the trigger must be pulled. Tests he conducted on the weapon showed it would not fire with a static weight pressure of four and one-fourth pounds on the trigger. However, a static weight pressure of four and one-half pounds applied to the trigger causes the gun to discharge. Additionally, he undertook tests on the weapon to determine if it would fire accidentally; and the gun never fired accidentally during any of the tests. However, consistent with his previous testimony, he acknowledged that anything exerting four and one-half pounds of static weight on the trigger would result in the gun firing, provided it was cocked.
In a homicide prosecution, the criminal agency of the defendant as the cause of the victim's death must be established beyond a reasonable doubt. However, it is not essential that the act of the defendant should have been the sole cause of the victim's death. If the act hastened the termination of life, or contributed directly or indirectly to the victim's death, in a degree sufficient to be a clearly contributing cause, the defendant's act constituted the "legal cause" of death. Another mode of analysis is determining whether or not the defendant's conduct was a substantial factor in bringing about the forbidden result, i.e., the victim's death. See State v. Matthews, 450 So.2d 644, 646-47 (La.1984); State v. Jones, 598 So.2d 511, 514 (La.App. 1st Cir.1992).
Dr. Juanito Y. Lim, an expert in pathology and forensic science who performed an autopsy on the victim's body, testified the cause of the victim's death was pulmonary embolus (a blood clot in the lungs) secondary to the gunshot wound. He removed bullet fragments from the victim in the area of the pelvic rim and found a large blood clot blocking arteries supplying both lungs. Dr. Lim stated that the gunshot wound started a chain of events leading to risks from surgery, *162 one of which was developing a pulmonary embolus. If the victim had not been shot, he would not have had a clotting problem. In other words, the bullet wound hastened the termination of the victim's life. Dr. Hypolite T. Landry, Jr., the Coroner of East Baton Rouge Parish, issued the victim's death certificate after he reviewed Dr. Lim's autopsy report. Dr. Landry's testimony corroborated the testimony of Dr. Lim and stated the cause of death was the gunshot wound that caused the pulmonary embolus. Clearly, any rational trier of fact could have concluded that the testimony of Drs. Lim and Landry proved beyond a reasonable doubt the criminal agency of defendant was the cause of the victim's death.
Based upon the physical evidence, the crime scene photographs, defendant's admission (that he picked up the 12 gauge shotgun and fired it in the direction of the victim's backside at close range from waist level as the victim was exiting the door), and defendant's pounding the table and telling the police that "no mother fucker is going to come in my house and hit me," any rational trier of fact could have concluded beyond a reasonable doubt that this shooting was not accidental, but rather one with the specific intent to kill or inflict great bodily harm. In returning a guilty verdict, it is obvious the majority of the jury concluded that the evidence proved the requisite element of specific intent for second degree murder. Once that conclusion was reached, it foreclosed the alternative theory of a manslaughter without specific intent based on the commission of the offense of illegal use of a weapon. This left the jurors with the remaining decision of determining whether the homicide should be reduced from second degree murder to manslaughter committed in sudden passion or heat of blood. It is obvious the majority of the jury concluded this homicide was not committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection; or that, if there was such provocation, defendant's blood had actually cooled, or an average person's blood would have cooled, at the time the offense was committed. Consequently, we find that, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the mitigating factors were not established by a preponderance of the evidence and that there was proof, beyond a reasonable doubt and to the exclusion of any reasonable hypothesis of innocence, that this homicide was a second degree murder. Therefore, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2:
In this assignment, defendant contends reversible error occurred, because his counsel at the second trial was denied all discovery requests. Defendant submits the state may not merely argue that production of discoverable material was already provided to defendant's former counsel who represented him during the first trial.
After being provided discovery, defendant's first trial began on April 1, 1996, and concluded with the mistrial two days later. Defendant's counsel for the second trial filed a motion for discovery and inspection and a motion for bill of particulars on August 22, 1996. The trial court denied the motions on the following day. The pertinent court minutes of September 5, 1996, reveal defense counsel objected to the denial of the motions and the state "agreed to afford counsel for the accused an opportunity to view the evidence requested." No later than Thursday, February 18, 1997, eight days before defendant's second trial began on February 26, defense counsel complained at a motions hearing that defendant was being denied discovery. During the hearing, defense counsel acknowledged that as of the preceding Thursday or Friday he had been provided with the transcript of the first trial; and the prosecutor maintained he had provided the defense with the state's entire file. When the trial court inquired of defense counsel what the defense was missing or had not had the opportunity to review, defense counsel provided no specifics to the court's inquiry, but argued only that the state must respond to the discovery questions submitted. The prosecutor then stated he would show defense counsel everything in the state's possession, including the state's evidence. While maintaining there had been noncompliance with discovery, defense counsel stated *163 he wanted to see the state's evidence and would view it that same day (February 18).
Based upon the record, we find no support for defendant's claimed discovery violation. Even where there is noncompliance with discovery, there is no reversible error unless the failure to comply results in actual prejudice to the defendant. See State v. Jones, 474 So.2d 919, 928 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). Even now, defendant's only claimed prejudice, as stated in his appellate brief, is a general allegation that he was prejudiced "in the form of an inability to fashion an adequate defense." Even assuming, arguendo, there was noncompliance with discovery, there would be no reversible error, since the record does not reflect any actual prejudice.
This assignment is meritless.

ASSIGNMENT OF ERROR NO. 3:
In this assignment, defendant contends that the trial court erred during trial by refusing to allow him to introduce into evidence a certified copy of a petition filed in a civil lawsuit on behalf of the victim's children against him in Nineteenth Judicial District Court claiming damages for the wrongful death of the victim due to the negligence of defendant. Defendant also asserts in brief that he should have been permitted to present testimony of the children concerning any conversations they may have had with the victim prior to his death and that "any testimony Mr. Charrier's children could have offered at trial would have exculpated appellant regarding his intent to kill or do great bodily harm to the decedent."
At the beginning of the third and final day of the second trial, the prosecutor stated that he had been provided with a copy of the referenced petition and that he objected to the presentation of any testimony by the victim's son on the basis of the son's lack of personal knowledge of the shooting and on relevancy grounds. Citing State v. Berry, 94-249 (La.App. 5th Cir. 10/25/94), 645 So.2d 757, defense counsel responded that he intended to introduce a certified copy of the petition into evidence.
In Berry, the Fifth Circuit found reversible error due to the trial court's failure to permit the accused, in a second degree battery trial, to cross-examine the alleged victim about her retention of an attorney (in an apparent effort to make a claim for damages in a civil lawsuit arising out of the alleged battery). The Fifth Circuit found that the ruling precluded defense questioning as to possible bias or interest of the alleged victim, whose testimony was in direct conflict with that of the accused (the only other eyewitness to the alleged crime). Berry, 645 So.2d at 762-63.
In the instant case, in disallowing the introduction of the certified copy of the petition, the trial court found the situation herein distinguishable from that in Berry, noting that (unlike the alleged victim in Berry who was a trial witness) the victim's children were not witnesses to the shooting and their allegations in the petition were mere opinion as to what happened at the time of the shooting.
The stated purpose given by defense counsel to the trial court for introducing the copy of the petition into evidence was to show the petitioners were alleging in their lawsuit as a basis for a damage award that the shooting was the result of an accident caused by the negligence of defendant in failing to handle the shotgun with due and appropriate care.
In State v. Lavalais, 95-0320, p. 9 (La.11/25/96), 685 So.2d 1048, 1054-55, cert. denied, ___ U.S. ___, 118 S.Ct. 85, 139 L.Ed.2d 42 (1997), the Louisiana Supreme Court stated the following:
In Chambers v. Mississippi, 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), the United States Supreme Court held that "where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice." In State v. Gremillion, 542 So.2d 1074 (La.1989), we recognized that while hearsay should generally be excluded, if it is reliable and trustworthy and its exclusion would interfere with the defendant's constitutional right to present a defense, it should be admitted. See also State v. Van Winkle, *164 94-0947 (La.6/30/95), 658 So.2d 198, 201 (reversible error to exclude hearsay evidence suggesting that defendant's roommate killed victim).
While we are cognizant that defense counsel proffered the copy of the petition and did not proffer the testimony he apparently anticipated eliciting from one or more of the victim's children, we find that defendant's constitutional right to present a defense and the interest of justice make it appropriate and necessary, under these particular and peculiar circumstances, to remand the case to the trial court for a reopened hearing on the defense motion for a new trial. The reopened hearing shall be limited to the presentation of competent testimony of any of the victim's children, which is relevant and material to defendant's defense. If the trial court determines, after taking into account the precepts recited in the above quoted excerpt from Lavalais, that the exclusion of any testimony of one or more of the children at the trial amounted to such prejudicial error as would require granting a new trial, the court must grant the same. Otherwise, we reserve to defendant the right to timely appeal once more any adverse ruling on the motion. In the absence of such a timely appeal, the present conditional affirmance of defendant's conviction and sentence become absolute. Cf. State v. Cabanas, 552 So.2d 1040, 1046 (La.App. 1st Cir.1989), writ denied, 556 So.2d 41 (La.1990) (remanding for a reopened hearing on a motion to suppress); State v. Collins, 546 So.2d 1246, 1256-57 (La.App. 1st Cir.1989), writ denied, 558 So.2d 599 (La.1990) (remanding for a reopened hearing on a motion to quash).

ASSIGNMENT OF ERROR NO. 4:
In this assignment, defendant contends the introduction of five photographs by the State during trial constituted reversible error. He essentially argues that the probative value of the photographs was minimal and outweighed by their prejudicial effect.
Two of the photographs are crime scene color photographs about 3 × 3 inches. One (S-2) depicts the victim unclothed lying on defendant's porch, and the other (S-3) depicts blood on the floor where the victim was lying. The other three photographs (S-31, S-32 and S-33) are autopsy color photographs about 3½ × 5 inches which depict the victim's lungs and the blood clot in the lungs. However, the record reflects that the defense expressly waived any objection to the introduction of all five of these exhibits into evidence. Defense counsel not only failed to enter a contemporaneous objection to these exhibits, but actually stated he had no objection to their introduction. Thus, the defense waiver precludes our review of defendant's claims. See State v. Francis, 345 So.2d 1120, 1121 (La.), cert. denied, 434 U.S. 891, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977); State v. Video Joe, Inc., 578 So.2d 182, 191 (La.App. 1st Cir.1991).
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 5:
Defendant contends that La.Code Crim. P. art. 782 and La. Const. art. I, Section 17 (providing for jury verdicts of 10 to 2 in cases in which punishment is necessarily confinement at hard labor) violate the Sixth and Fourteenth Amendments of the United States Constitution. In making this argument, defendant asserts that, because the guilty verdict in his case was by a 10 to 2 vote, he was convicted by a jury which was not convinced of his guilt beyond a reasonable doubt. Hence, he concludes that article 782 additionally contravenes La.Code Crim. P. art. 804 and La. R.S. 15:271, regarding the requirement of proof of guilt beyond a reasonable doubt.
In Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) and Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the United States Supreme Court upheld the validity of nonunanimous jury verdicts for twelve person juries. The Louisiana Supreme Court has consistently held that article 782 does not violate the Sixth or Fourteenth Amendments. See State v. Belgard, 410 So.2d 720, 726 (La.1982) and cases cited therein. Accordingly, we have no difficulty rejecting defendant's challenges of the constitutionality of La. Const. art. I, Section 17 and art. 782, which neither transgress the Sixth or Fourteenth Amendments *165 nor the requirement of proof of guilt beyond a reasonable doubt.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 6:
In this assignment, defendant contends statements made by the prosecutor during the state's closing argument amount to prosecutorial misconduct, necessitating reversal of his conviction and remand for a new trial.
In closing argument, the prosecutor asserted that the jury should reject the defense theory of an accidental shooting as opposed to a shooting with specific intent to kill or inflict great bodily harm and that, thus, the jury should return a verdict of guilty of second degree murder rather than guilty of manslaughter. The prosecutor concluded his closing argument with the claimed improper statements, which are as follows:
Now I ask that you do your duty and you tell the citizens of East Baton Rouge Parish whether provocation is sufficient to deprive an average person of his self-control and cool reflection includes showing up to fix somebody's car that got [sic] an attitude you don't feel like dealing with them you push them down into their chair; you are walking out the door unarmed with your back to him and you get shot in the butt. You tell everybody whether that is second degree murder or that's manslaughter. Thank you.
Thereupon, out of the hearing of the jury, defense counsel objected to the statements quoted above, without requesting a mistrial or an admonition. As the basis for the objection, defense counsel indicated that the prosecutor could neither tell the jury to go out and convict nor tell the jury it had a duty to the citizens of the parish to convict. In overruling the objection, the trial court ruled that the prosecutor had not exceeded the proper limits of closing argument and that the court would, during jury charges, instruct the jurors on their duties as jurors. Thereupon, defense counsel proceeded with his closing argument.
La.Code Crim. P. art. 774 restricts closing arguments in criminal cases to the evidence admitted, to the lack of evidence, to conclusions of fact that may be drawn therefrom, and to the law applicable to the case. A prosecutor should refrain from argument which tends to divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused under the controlling law. State v. Messer, 408 So.2d 1354, 1356 (La.1982). However, before this court will reverse on the basis of improper closing argument, we must be thoroughly convinced that the remark influenced the jury and contributed to its verdict. See State v. Eaton, 524 So.2d 1194, 1208 (La.1988), cert. denied, 488 U.S. 1019, 109 S.Ct. 818, 102 L.Ed.2d 807 (1989).
We believe the prosecutor's statement that "you do your duty and you tell the citizens of East Baton Rouge Parish" taken in context was argument based on the evidence. However, even if improper, we are thoroughly convinced the statement did not influence the jury or contribute to the verdict. Consequently, this assignment lacks merit.
CONVICTION AND SENTENCE CONDITIONALLY AFFIRMED, AND REMANDED FOR A REOPENED HEARING ON DEFENDANT'S MOTION FOR A NEW TRIAL WITH INSTRUCTIONS.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge ad hoc by special appointment of the Louisiana Supreme Court.
[2] Although it is not clear from the record, presumably, the outer door was equipped with a spring or other type automatic closing device.
[3] Kretser and Boucher both looked defendant over and neither found any redness or marks to support defendant's claim that he had been struck by the victim. According to Kretser, defendant also stated that the victim pushed him down in his chair.