GUIDRY, J.
|2The defendant, Beryl Anne Deluzain, was charged by bill of information with issuing worthless checks in an amount over $500.00, a violation of La. R.S. 14:71. She pled not guilty. Following a trial by jury, the defendant was found guilty as charged. The trial court deferred imposition of sentence under La. C. Cr. P. art. 893 and placed the defendant on supervised probation for four years. The court also ordered the defendant to pay $33,445.06 in restitution to the victim. The defendant now appeals urging three assignments of error as follows:
I. The evidence as a whole was insufficient to prove beyond a reasonable doubt Beryl Deluzain was guilty of issuing worthless checks in an amount over $500.00.
II. The trial court erred when it instructed the jury specific intent to defraud existed at the time the check was presented and not at the time it was issued.
III. The trial court erred when it restricted defense counsel’s voir dire in regards to the issuer of a check must have specific intent to defraud at the time the check was written.
Finding the evidence insufficient to prove an essential element of the crime, we reverse the conviction and sentence.
FACTS
In October 2003, the defendant and Al-lain Poux entered into an agreement for the sale of “European Expressions, Inc.” Mr. Poux, the owner of an outdoor garden supplies business and the property where it was located, agreed to sell the business’s inventory and equipment to the defendant. He also agreed to allow the defendant to lease the property. A payment plan was devised wherein the defendant agreed to pay Mr. Poux installments of $2,250.00 per month for the inventory and equipment of the business and $2,500.00 per month to lease the property. The lease and merchandise payments were scheduled to commence in November 2003. In connection *1056 with the payment agreement, the defendant tendered 24 postdated checks to Mr. Poux (twelve $2,250.00 checks for the monthly inventory/equipment installment payments and | ⅞ twelve $2,500.00 checks for the first year of lease payments.) Two checks were postdated for the first of each month through November 2004.
For the first eight months of the agreement, the monthly checks were presented to the bank on the date indicated on the draft. The bank honored each of the checks. However, when Mr. Poux presented the checks for the July 2004 payments, the checks were returned by the bank unpaid (insufficient funds). Thereafter, both checks for August 2004, the inventory payment check for September 2004, both checks for October 2004, and both checks for November 2004, were also returned due to insufficient funds upon presentment. After unsuccessfully attempting to collect the money for the nine[1] returned checks from the defendant, Mr. Poux sent the defendant certified letters demanding that she honor the unpaid checks within ten days. The defendant did not respond to the demands. Mr. Poux subsequently reported the matter to the St. Tammany Parish District Attorney’s Office. Sam Gebbia, the director of the Worthless Checks Division of the District Attorney’s Office, testified that once worthless checks complaints are submitted to the District Attorney’s Office, three separate “demand for payment” letters are sent to the issuer of the unpaid checks. He explained that when the defendant herein failed to respond to the District Attorney’s Office’s collection attempts, a warrant was secured for her arrest.
SUFFICIENCY OF THE EVIDENCE
In cases such as this one, where the defendant raises issues on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should preliminarily determine the sufficiency of the evidence before discussing the other issues raised on appeal. State v. Hearold, 603 So.2d 731, 734 (La.1992). The sufficiency issue must be decided first because a finding of insufficient evidence to |4support the guilty verdict bars the retrial of a defendant based on the constitutional protection against double jeopardy. Thus, all other issues would be rendered moot. State v. Davis, 01-3033, pp. 2-3 (La.App. 1st Cir.6/21/02), 822 So.2d 161, 163. Accordingly, we will first determine whether the evidence was sufficient to support the defendant’s conviction for issuing worthless checks.
A conviction based on insufficient evidence cannot stand as it violates due process. See U.S. Const, amend. XIV; La. Const, art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. C. Cr. P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
When analyzing circumstantial evidence, La. R.S. 15:438 provides, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty *1057 beyond a reasonable doubt. State v. Shanks, 97-1885, pp. 3-4 (La.App. 1st Cir.6/29/98), 715 So.2d 157, 159.
The defendant argues the evidence presented at the trial of this matter was insufficient because the state failed to prove that she intended to defraud Mr. Poux when she issued the series of checks in connection with the business agreement. Since intent to defraud is an essential element of the crime charged, she asserts her conviction and sentence must fall. In response, the state argues that it was entitled to the presumption of evidence of intent to defraud based upon the defendant’s failure to | Bpay following notice that the checks she issued were dishonored upon presentation.
Louisiana Revised Statutes 14:71(A)(1)(a) provides, “[i]ssuing worthless checks is the issuing, in exchange for anything of value, whether the exchange is contemporaneous or not, with intent to defraud, of any check, draft, or order for the payment of money upon any bank or other depository, knowing at the time of the issuing that the offender has not sufficient credit with the bank, or other depository for the payment of such check, draft, or order in full upon its presentation.” Louisiana Revised Statutes 14:71(A)(l)(b) provides, “[t]his Section shall apply to a check, draft, or order tendered for satisfaction, in whole or in part, of payments due on installment contracts, open accounts, or any other obligation for which the creditor has authorized periodic payments or the extension of time in which to pay.” Considering the language of the statute, it is clear that the intent to defraud must exist at the time the check is issued, i.e., coincident with the first delivery of the instrument in complete form. La. R.S. 14:71, Reporter’s Comment (“It is assumed that the following definition of ‘issuing’ in Section 191 of the N.I.L. [former][R.S. 7:191] will be followed: ‘Issue means the first delivery of the instrument complete in form, to a person who takes it as a holder.’ ”). See also La. R.S. 10:3-105(a) (“ ‘issue’ means the first delivery of an instrument by the maker or drawer, whether to a holder or nonholder, for the purpose of giving rights on the instrument to any person.”).
Furthermore, the fact that La. R.S. 14:71(A)(l)(b) makes the worthless check statute applicable to checks issued for payments due on installment contracts and open accounts does not change the need for intent to defraud at the time of issuance. This section of the statute does not presuppose that the check for payment on the named credit accounts will be postdated. Therefore, in order to convict the defendant in this case, the state was required to prove: (1) that the defendant issued a check in exchange for something of value; (2) with the intent to defraud at the time of issuance; and (3) with the knowledge that at the time she wrote the check, she did not | ,;have enough money in her account for the check to clear when presented. See State v. Tullier, 504 So.2d 1001, 1002 (La.App. 1st Cir.1987). Intent is a question of fact to be decided by the trier of fact. It need not be proven as a fact, but may be inferred from the circumstances. See State v. Broaden, 99-2124, p. 18 (La.2/21/01), 780 So.2d 349, 362, cert. denied, 534 U.S. 884, 122 S.Ct. 192, 151 L.Ed.2d 135 (2001).
The defendant in this case does not dispute that she issued the postdated checks to Mr, Poux as payment for the leasing of the property for one year and for twelve installment payments on the equipment and inventory. It is also not disputed that the defendant was aware, at the time of the issuing, that she did not have sufficient credit with the bank to cover all of the checks. Thus, as previously noted, the sole issue presented herein is whether the *1058 essential element of intent to defraud was proven.
At trial, the state relied on the statutory-presumption set forth in the worthless checks statute to prove fraudulent intent. Louisiana Revised Statutes 14:71(A)(2) provides:
The offender’s failure to pay a check, draft, or order, issued for value, within ten days after notice of its nonpayment upon presentation has been deposited by certified mail in the United States mail system addressed to the issuer thereof either at the address shown on the instrument or the last known address for such person shown on the records of the bank upon which such instrument is drawn or within ten days after delivery or personal tender of the written notice to said issuer by the payee or his agent, shall be presumptive evidence of his intent to defraud.
In State v. Lindsey, 491 So.2d 371 (La.1986), the Supreme Court concluded that the presumption provided for in La. R.S. 14:71 is a permissive presumption since the trier of fact is free to accept or reject the inference it provides. The rebuttable presumption allows, but does not require, the trier of fact to find that the defendant possessed the intent to defraud based upon notification by certified mail and failure to pay within ten days. The presumption is valid only in cases where the evidence supports the inference it suggests. See State v. Lindsey, 491 So.2d at 376-377.
|7In the instant ease, the defendant argues that the presumption of intent to defraud was rebutted by evidence adduced at the trial. She claims that the fact that 1) almost eight months (and payment of approximately $60,000.00) had passed before the first check was dishonored, 2) she mortgaged her home to assist in the business endeavor, and 3) she later tried to get her brother to take over the business when she could no longer make the payments, all show that she did not intend to defraud Mr. Poux. Thus, she argues that the permissive presumption was not supported by the facts of this case and was insufficient to prove the necessary element of intent to defraud.
In response, the state notes that the defendant failed to voluntarily vacate the premises or return any of the purchased merchandise, and she never made any attempt to pay the checks after they were dishonored. The state argues that these facts are evidence of the defendant’s intent to defraud Mr. Poux.
After a thorough review of the record before us, we agree with the defendant’s argument. Although the defendant does not dispute that she failed to pay Mr. Poux the amount of the checks within ten days after receiving notice of nonpayment of the checks, the evidence in this case does not support the inference suggested by the rebuttable presumption. Thus, the presumption was rebutted by the evidence. As previously noted, the defendant testified that the payment arrangements were made using postdated checks because she did not have sufficient funds for full payment when the checks were issued. It was the understanding of both parties that Mr. Poux would hold the postdated checks until the first of each month, at which time the defendant would have sufficient funds in her bank account to cover the checks. Mr. Poux complied with the agreement and held each of the postdated checks until the date of maturity before presenting it for payment. The arrangement proceeded without a problem for approximately eight months. It was not until July 2004, when the first check was dishonored.
|sAt the trial of this case, the defendant did not dispute that she received notice from Mr. Poux that several of her checks had been returned unpaid. The state presented evidence that the defendant was *1059 given notice, via certified mail, demanding payment. The defendant also admitted that she did not remit payment in response to the demand letters. She further acknowledged that, at the time of the trial (over four years later), the checks remained unpaid. However, the defendant denied possessing intent to defraud Mr. Poux at the time of the issuance of the checks. She testified that she entered into the agreement with the intentions of successfully running the business and fulfilling the payment agreement. This, she claimed, was evidenced by the payment of the first eight months of checks. The defendant testified that her failing health and a decline in her business made it impossible for her to deposit sufficient funds into her account to cover the checks.[2] As evidence that she lacked any fraudulent intent, the defendant further testified that once the checks began to bounce, she sought other means to secure the funds to pay Mr. Poux. The defendant introduced a copy of a letter dated July 27, 2004, wherein Mr. Poux agreed to allow the defendant to transfer the lease of the property to her brother, Bryan Deluzain. The defendant explained that this letter had been requested by financial institutions during Bryan Deluzain’s efforts to secure the financing necessary to take over the business. Unfortunately, Bryan Delu-zain was unable to secure financing.
At trial, in his explanation of the decision to utilize the postdated checks to facilitate the transaction, Mr. Poux did not indicate any deception by the defendant. It appears, from his testimony, that he was aware that the defendant could not make an upfront payment for the business; thus, she did not have sufficient funds available to cover the checks. He explained:
IsA: Well, at the time, I don’t think she had the cash, although I don’t know. I don’t know. But I think it was a safe way for payment of the merchandise and whatnot, and I believe she wanted to buy also some additional merchandise to fill up the place, plants and trees, so I think she needed some cash flow.
Q. So how did it come about where the 24 checks were delivered to you? Who said let’s do it that way?
A. I don’t remember. I think it was a mutual agreement.
Q. And you’re saying that she’s short cash, right, so I understand your testimony.
A. I don’t know. I don’t know her finances, but evidently she couldn’t pay cash.
Q. Did you ask for cash up front?
A. Well, I asked for payment. I didn’t ask for cash or credit card or—
Q. By payment, what do you mean? Payment for the merchandise on the property?
A. Correct.
Q. And you knew that she didn’t have cash up front to cover that; is that correct?
A. 1 don’t know.
Q. Excuse me?
A. I don’t know.
Q. Did she ever tell you that?
A. I don’t think so.
The gravamen of the offense of issuing a worthless check is the issuer’s fraudulent intent at the time the check is issued. *1060 Although the statute creates a permissible inference or presumption of fraudulent intent, the inference may be rebutted by the defendant’s evidence, and alone, it is not enough to sustain a conviction; corroborating evidence of some other type of deception is necessary to establish intent. See State v. Jones, 400 So.2d 658 (La.1981).
|10The facts of this case, particularly the payment agreement, indicate the existence of a credit arrangement between the defendant and Mr. Poux. The act of tendering postdated checks under these facts was nothing more than a representation by the defendant (the issuer) that she expected to have funds in the bank on a future date to satisfy the checks. The fact that the defendant acknowledged at the time of issuance that she did not have sufficient funds to cover the checks is strong evidence against any intent to defraud. The defendant was forthcoming with Mr. Poux and did not attempt to deceive him regarding her inability to make full payment. Also, the fact that Mr. Poux agreed to accept the checks that, arguably, he knew were worthless at the time of issuance serves to relieve the defendant of any criminal responsibility under La. R.S. 14:71, because no intent to defraud at the time of issuance can be proven. The defendant’s failure to honor the postdated checks as agreed could be pursued in a civil action, but it falls short of the conduct proscribed in La. R.S. 14:71.[3]
The state argues that the facts of this case are similar to those in State v. Washington, 29,784 (La.App.2d Cir.9/26/97), 700 So.2d 1068, wherein a conviction for issuing worthless checks was upheld using the presumption of intent to defraud. A notable distinction is that there was conflicting evidence in Washington regarding whether the defendant disclosed that she did not have sufficient credit with the bank when she issued the check. The defendant claimed she disclosed that she did not have sufficient funds, but the sales manager of the car dealership to whom she issued the check testified that the defendant did not tell him she did not have the money when he accepted the check. In affirming the defendant’s conviction in that case, the appellate court noted that the trial court found, among other things, that the defendant did not advise the sales manager that the money was not in her account | nwhen she issued the check. State v. Washington, 29,784 at pp. 6-7, 700 So.2d at 1074. The defendant’s deceptive failure to disclose her lack of funds to cover the check (which was not postdated), coupled with her failure to honor the check within the 10-day period after demand, her failure to return the vehicle for several months after the demand, and her failure to cooperate with the dealership, were sufficient to support the statutory presumption of intent to defraud. In this case, unlike Washington, it is undisputed that the checks were postdated. Postdated checks can be used in situations where the funds are not available at the time of issuance, but the maker fully intends that the funds will be available when the checks are presented. The defendant described the existence of such an agreement, and Mr. Poux’s testimony does not dispute it; he essentially claimed he did not know if the defendant had all of the funds in her account when the checks were issued, but he nevertheless clearly expected that the funds would be there as of the date of the check. The evidence herein simply does not support an inference of intent to defraud. See State v. Jones, 400 So.2d 658 (La.1981). The defendant’s subsequent actions of continuing to occupy the premises until evicted, fail *1061 ing to return merchandise to Mr. Poux, and failing to make good on the checks, are not sufficient to prove intent to defraud at the time of issuance.
This assignment of error has merit.
For the foregoing reasons, the defendant’s conviction and sentence are reversed.[4]
CONVICTION AND SENTENCED REVERSED.
CARTER, C.J., dissents with reason.

. In her brief, the defendant claims there were eleven returned checks. However, the evidence and the bill of information reflect that there were only nine returned checks.

. The defendant testified she was diagnosed with pulmonary hypertension, a condition she believed to be fatal. Although she later learned that the diagnosis was not accurate, the defendant claimed the diagnosis affected her ability to adequately run the business. She further testified that the threat of hurricanes in the area caused a "panic” that directly affected the outdoor business.

. The record reflects Mr. Poux also filed a civil action against the defendant based upon her breach of the agreement.

. Since resolution of the assignment of error challenging the sufficiency of the evidence results in a reversal of the defendant's conviction and sentence, we pretermit discussion of the remaining assignments of error.