677 So.2d 1103 (1996)
Patricia Ann TEMPLE
v.
SCHWEGMANN GIANT SUPER MARKETS.
No. 95-CA-2491.
Court of Appeal of Louisiana, Fourth Circuit.
July 10, 1996.
*1104 John P. Ferrara, New Orleans, for Plaintiff-Appellant.
George R. Blue Jr., Metairie, for Defendant-Appellee.
Before BARRY, KLEES and ARMSTRONG, JJ.
ARMSTRONG, Judge.
In this personal injury action, the plaintiff, Patricia Ann Temple, appeals the dismissal of her damage claims against defendant, Schwegmann Giant Super Markets. Finding no error in the judgment of the trial court, we now affirm.
Plaintiff, Patricia Ann Temple, her boyfriend, and two family members, were shopping at the Schwegmann store on St. Claude Avenue at approximately 6:30 p.m. on May 2, 1992. The plaintiff was dressed casually and wore tennis shoes with rubber soles. She walked up and down the aisles at the store gathering various items. As she walked down the last aisle, she slipped and fell, injuring her right knee and back. The plaintiff testified that she slipped on grapes and a puddle of water. Her boyfriend, Darnel Robertson, who witnessed her fall, as did her family members, summoned the Schwegmann security guard, Tony Williams. Robertson and Williams assisted the plaintiff into a wheel chair after which Williams left them to get a camera to photograph the area; however, before he returned with the camera, a porter had cleaned up the spill. The plaintiff accompanied Williams to the office and gave a statement concerning the incident. Williams made a report of the accident, which the plaintiff signed.
After leaving the store, the plaintiff went to Charity Hospital where she was x-rayed and given pain medication.
On May 8, 1992, the plaintiff was examined by Dr. Kenneth Combs who diagnosed a mild to moderate contusion to her right knee and moderately severe lumbosacral muscle strain which he treated with muscle relaxants and heat treatments. Dr. Combs treated her for approximately 6 months. The plaintiff's injuries caused her to miss one month's work and at the time of trial, she still experienced back pain.
Following a bench trial, the judge dismissed the plaintiff's claims, finding that she failed to carry her burden of proof under La.R.S. 9:2800.6.
In her sole assignment of error, the plaintiff argues the trial court erred in ruling she failed to prove that the defendant either had actual or constructive notice of the hazard and failed to exercise reasonable care.
In 1990, the Louisiana Legislature amended La.R.S. 9:2800.6, substantially changing the burden of proof in slip and fall cases. As a result of the amendment, the statute now provides, in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing *1105 in or on a merchant's premises, the claimant shall have the burden or proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the condition existed for such period of time that it would have been discovered if the merchant had exercised reasonable care.
The plaintiff's cause of action is governed by the current version of La.R.S. 9:2800.6. The plaintiff thus had the burden of proving she slipped and fell due to a condition on the defendant's premises which presented an unreasonable risk of harm; that the risk of harm was reasonably foreseeable; that the defendant either created the condition or had actual or constructive notice of the condition prior to the occurrence; and that the defendant failed to exercise reasonable care. Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (La. 5/22/95), 655 So.2d 309.
The plaintiff testified that she fell on "smashed grapes [on the floor] with water, slimy and dirty" on the aisle where the ice cream was kept.
Darnel Robertson, the plaintiff's boyfriend, testified that he was walking next to the plaintiff as she fell. When he examined the floor in the area of her fall he saw:
[S]mashed grapes, and muddy, dirty, dirty, dirty. It was filthy. Like it had been there quite a while, dried, like almost dried up water like and some grains (sic) on the floor.
The plaintiff's last witness was her grandmother, Lillie Mae Williams, who was walking about three feet behind her granddaughter when she fell. She described the area where the plaintiff fell as "[Purple] grapes and dirt, like a little water, like sloppy, like."
The only witness offered by the defendant was Tony Williams, the Schwegmann employee who investigated Ms. Temple's accident. Williams had been employed by Schwegmann's as a security guard for about eight years but had been assigned to the St. Claude store for only two months at the time the plaintiff fell. His duties included making periodic inspections of the store for shoplifters, cleanliness, obstructions in the aisles, and surveilling the aisles from the observation booth located in the rear of the store. As a matter of policy, management personnel also made periodic inspections by walking the aisles and observing floor conditions. Porters were on duty at the time of the accident. He said the store had a total of eleven aisles. The ice cream aisle, which is where the plaintiff fell, is on the opposite side of the store from the produce department.
Tony Williams was at the seafood counter when he received notice of the accident over the store loudspeaker. Immediately before he walked to the seafood counter, he had been in the observation booth about 10 minutes. Prior to going into the observation booth, he performed a periodic inspection by walking the entire store, aisle by aisle. During this inspection, which was approximately 10 minutes prior to the accident, he found no grapes or water in the aisle where the plaintiff fell or in any other area of the store. When questioned about his vantage point and purpose for being in the observation booth, Williams said that the booth is located in the rear of the store on a raised platform and has a large "one way mirror" window, approximately 17 feet from where the accident occurred. The booth is used to spot shoplifters in aisles which are detached from the rest of the store, including the aisle where Ms. Temple fell. While in the observation booth, Williams did not see anyone spill any grapes or water on the floor.
When he went to the scene of the accident he saw three green grapes, two of which were crushed, but no water or dirt.
The trier of fact may accept or reject any part of a witness' testimony. Dominici v. Wal-Mart Stores, Inc., 606 So.2d 555 (La. App. 4 Cir.1992). The trier of fact may choose to reject all of the testimony of any *1106 witness or may believe and accept any part or parts of a witness' testimony and refuse to accept any other part or parts thereof. LaHaye v. Allstate Ins. Co., 570 So.2d 460 (La.App. 3 Cir.1990), writ denied, 575 So.2d 391 (La.1991). The trial judge may have chosen to discredit the plaintiff's and her witnesses' testimony completely or to disregard Robertson's testimony that the spill and grapes appeared to have been on the floor for "quite awhile". Neither the plaintiff nor her grandmother, Lillie Mae Williams, testified that the spill appeared to have been on the floor for some time. In fact each lady stated she had no idea how long the condition existed prior to the accident.
Conversely, the judge may have found Schwegmann's security guard, Tony Williams, a more credible witness. He testified with specifics concerning the time of his inspections and his ability to observe the location of the spill. Moreover, if the judge rejected only Robertson's estimation that the spill was "old" and accepted Williams' testimony concerning his inspection, the judge could have concluded that Schwegmann did not have notice, actual or constructive, of a hazard and that it exercised reasonable care under the circumstances. The record supports this view and we cannot substitute the factfinder's reasonable evaluations of credibility or inferences of fact for our own, even if we would have weighed the evidence differently. Stobart v. State, Through the Department of Transportation and Development, 617 So.2d 880 (La.1993).
For the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.