871 So.2d 1178 (2004)
STATE of Louisiana
v.
Michael BOWENS.
No. 2003-KA-1408.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 2004.
*1179 Eddie J. Jordan, Jr., District Attorney, Claire Adriana White, Assistant District Attorney, New Orleans, LA, for Plaintiff/Appellee.
Bruce W. Harris, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD).
TERRI F. LOVE, Judge.
Defendant was convicted of indecent behavior with a juvenile, and sentenced to three years at hard labor. The sentence was suspended and the trial court placed the defendant on five years active probation with the special condition that he serve fifty consecutive weekends in the Orleans Parish Prison. The defendant was also ordered to register himself as a sex offender in accordance with La. R.S. 15:542. On appeal the appellant alleges *1180 the trial court erred by sustaining the State's objection after defense counsel asked the victim whether she had retained a civil attorney. For reasons assigned below, we reverse the defendant's conviction and sentence.

STATEMENT OF CASE
On September 9, 1998, the State filed a bill of information charging Michael Bowens with molestation of a juvenile. The defendant pled not guilty at his arraignment on September 23, 1998. A preliminary hearing was held on November 13, 1998, and the trial court found probable cause. The case was set for trial on November 30, 1998, and on that date the State entered a nolle prosequi.
On January 6, 1999, the State re-instituted the charge and the defendant pled not guilty at his arraignment on February 5, 1999. The case proceeded to trial on March 11, 1999, and the jury found the defendant guilty of indecent behavior with a juvenile. On June 24, the trial court denied defendant's motion for new trial and motion of post verdict judgment of acquittal. Mr. Bowens waived all delays. The court sentenced the defendant to three years at hard labor and suspended the sentence. The court placed the defendant on five years active probation with the special condition that he serve fifty consecutive weekends in the Orleans Parish Prison. The defendant was also ordered to register himself as a sex offender in accordance with La. R.S. 15:542. Subsequently, the defendant lodged this appeal.

STATEMENT OF FACT
The victim, U.M., testified that on December 13, 1997, she was employed at Wendy's restaurant located at 1515 Poydras St. as a crew worker.[1] She was sixteen years old at the time. On the day in question she arrived at work at approximately 12:30 p.m. and prior to her clocking in, the manager, Michael Bowens, made a crude gesture towards her by licking his lips. Later during the day while U.M. was on a break she was talking about a book she was reading for school entitled "Make You Want to Holler," by Nathaniel McCauly, and Mr. Bowens stated to her that "He would make her want to holler." When U.M. heard the remark she stated to Mr. Bowens, "What did you say," and Mr. Bowens did not respond.
Later in the day, while the restaurant was closing, U.M. was washing trays, and Mr. Bowens came up behind her and caressed her stomach. U.M. told him to "get the F off of me" and told him to get back in his office. She also made a derogatory comment about the defendant's penis, and Mr. Bowens responded in kind. Mr. Bowens also told U.M. that rather than taking her to her home after work, he would be taking her to his place. U.M. did not respond to these comments.
Later, U.M. related what Mr. Bowens had said about not taking her home to another co-worker named Kenneth, who told her that Mr. Bowens was just acting silly and that he did not mean anything by it.
After the restaurant had closed, Mr. Bowens left to take another coworker, Nicole, home. U.M. remained in the restaurant alone. She telephoned a pair of friends and related what had happened that day and how uneasy she felt about getting a ride home from Mr. Bowens. One friend, Casey, told U.M. that if she wasn't home by 9:00 or 9:30 he would call the police and her father.
When Mr. Bowens returned, U.M. was still on the telephone, and Mr. Bowens went into the office and then turned off all *1181 the lights in the restaurant. Approximately ten to fifteen minutes later he came out and asked U.M. if she was ready. She ended her conversation shortly thereafter and then went into the office to replace the phone on the charger. When U.M.'s back was turned, Mr. Bowens came from behind the desk and began to caress her stomach. U.M. pushed him off of her, and the two began to struggle until the telephone rang. U.M. stated she was able to get away from Mr. Bowens and went to get her coat and things.
After Mr. Bowens hung up the telephone, he got behind U.M. and pushed her into the wall. Mr. Bowens pulled U.M.'s shirt out of her pants, reached his hand under her shirt and caressed her breast. U.M. pushed Mr. Bowens off of her, but he tried to kiss her, and she pushed him off her again. Then Mr. Bowens picked her up and took her into the office. Once inside, he put her on top of the desk. U.M.'s legs were open, and Mr. Bowens had himself between them. He tried to kiss her on the lips and the neck and then pressed his penis into her vaginal area. She pushed him off of her again, and they struggled. She asked him if she could leave, and finally he stepped aside from the doorway and allowed her to go.
Mr. Bowens told U.M. that he was just playing, that he had heard she was easy, and that she had proved him wrong. He also said that he was teaching her a lesson. The two rode the elevator up to his car. While he was driving her home, he asked her if she was going to quit and whether she was going to tell her parents what had happened. When he dropped her off at her house, her father was waiting.
U.M. explained that she did not inform her father what had happened for fear that he would go after Mr. Bowens and do something irrational. She likewise explained that she did not tell her mother for fear that she would try to kill Mr. Bowens. On the following Monday, U.M. told her teacher what had happened. The principal then informed Officer Olivia Fontenot, the school resource officer, who performed the investigation.
The State called Armand Chauvin, who was employed as a security officer at 1515 Poydras Street. Shortly after the incident, he was asked to complete a review of the surveillance video tape for the day of the incident. He testified that Mr. Bowens can be seen leaving the Wendy's at 8:04 p.m. with a woman and locking the door. The tape reflects that another woman was still located inside the store at that time. The tape showed that he returned to the restaurant at 8:41 p.m. and that upon returning the lights inside the restaurant went out. The tape showed that he left the restaurant at 8:57 p.m. with another woman.
Officer Olivia Fontenot testified that she was employed as a School Resource Officer with the New Orleans Police Department in December of 1997. She conducted the investigation of U.M.'s molestation and was responsible for obtaining a warrant for Michael Bowens' arrest.
The defense called Corey Lewis, a comanager for Wendy's. He stated that he knew Michael Bowens from working with him. He stated Mr. Bowens had a reputation for being truthful. Pamela Hall testified that she has worked as a crew member for Wendy's for sixteen years. She stated that she has known Michael Bowens for sixteen years and that for the time she has worked with him he did not assist coworkers with personal or occupational concerns. Rochelle Bowens testified that she has known her husband for eight years and they have been married for six years. She stated that her husband has a good reputation in the community.
*1182 Michael Bowens testified that he was currently employed as a sales technician with a local electrical company. He related that on the day in question, U.M.'s mother called and asked if he could drive U.M. home and he told her that he could. He explained that he and his wife's plans had fallen through and that instead he was going to Lake Forest Plaza, making it convenient to drive U.M. home.
Mr. Bowens testified that after he returned to the restaurant from taking Nicole home, he went into his office, finished up the rest of his count, and put his paperwork into the book. He testified this took about fourteen minutes.
Mr. Bowens denied all the allegations concerning his conduct on that day. He stated that while he was driving U.M. he questioned her about an incident that was reported to him wherein U.M. had been sexually assaulted at work by an applicant for employment at Wendy's, and asked why she had not reported it to him. He was under the belief that this subject, named Chris, was an acquaintance of U.M. He stated that U.M. told him that she did not report it because she did not think that anything would be done about it.
On cross-examination, Mr. Bowens stated that he did not recall turning out the lights when he returned from driving Nicole home, and that he recalled turning them out as they left. He noted that he may have turned out the lights from dining room number two or number three when he departed, which may not have been reflected in the surveillance pictures.

ERRORS PATENT
A review for errors patent reveals none.

ANALYSIS
Defendant alleges three assignments of error. First, he argues he was denied the right to cross-examine the victim regarding how long it took for the alleged incident to occur. Second, defendant argues that the evidence was insufficient to satisfy each element of the charge. Finally, he argues that the trial court erred in sustaining the state's objection after defense counsel asked the victim whether she had retained a civil attorney.

FIRST ASSIGNMENT OF ERROR
Defendant alleges that he was denied the right to cross-examine the victim regarding how long it took for the alleged incident to occur. During the trial the following colloquy occurred:
Examination By Mr. Harris (Defense Counsel):
Q. Now [U.M.], did you testify that you and him walkedbased on this picture; walked out of the restaurant and into the elevator at 8:57 p.m.?
A. Un-huh.
Q. Okay. Now, from 8:41 p.m. to 8:47 p.m., how long a period of time is that?
A. Like twenty-six minutes.
Q. It's twenty-six minutes to you?
A. Wait! By
Q. 8:41, 8:51, 8:57
A. Oh!
By Ms. Casey (The Prosecutor):
Judge I'm going to object to Mr. Harris' quiz of the victim's mathematical ability.
By The Court:
Sustained.
Louisiana Code of Evidence Article 611, relative to the mode and order of interrogation and presentation, provides in pertinent part:
A. Control by court. Except as provided by this Article and Code of Criminal Procedure article 773, the parties to a proceeding have the primary responsibility of presenting the evidence and examining the witnesses. *1183 The court, however, shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:
(1) Make the interrogation and presentation effective for the ascertainment of the truth;
(2) Avoid the needless consumption of time; and
(3) Protect witnesses from harassment and undue embarrassment.
The fact that the video surveillance reflected that Mr. Bowens and U.M. were in the restaurant for a period of sixteen and not twenty-six minutes was evident to the jury because the video surveillance tapes were time-stamped. Defense counsel established his point and argued it in closing arguments. Furthermore, defense counsel questioned the victim at length regarding her recollection of the amount of time that transpired after Mr. Bowens returned to the restaurant. There is nothing to indicate that the defendant's right to crossexamine the victim in this regard was prejudiced. The trial court acted within its discretion in sustaining the objection. The assignment of error lacks merit.

SECOND ASSIGNMENT OF ERROR
Defendant alleges that the evidence was insufficient. The standard of review for the sufficiency of the evidence is whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that the State proved the essential elements beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
In support of his argument, defendant identifies three elements that he suggests demonstrates the victim's testimony was not worthy of belief or at least that Mr. Bowens' testimony was more credible, such that a rational jury could not have found him guilty as charged beyond a reasonable doubt.
First, defendant notes that the victim's testimony regarding the length of time that elapsed during the alleged assault proved to be inaccurate. As noted by defendant, the video surveillance reflects that Mr. Bowens was in the restaurant with U.M. for a period of sixteen minutes. U.M. testified that they were in the restaurant approximately 5-10 minutes longer. Although the physical evidence reflects that the two may have been in the restaurant for a slightly shorter period of time than U.M. recalled, we do not find that discrepancy to be significant, or that a rational jury would have cause to discount the victim's testimony because of it.
Defendant further alleges that the victim lied at trial about not having read the police report prepared by Officer Fontenot; however, the record fails to substantiate this fact. During the trial, defense counsel questioned U.M. as to whether she had read Officer Fontenot's report, and she replied that she had not. Defense counsel then questioned U.M. concerning her testimony at the preliminary hearing wherein she stated, "I don't know why you going through all that anyway [reports], because they put down stuff that I didn't say." U.M. was then asked if she could explain what she had meant by the statement, and she replied that she could not. Other than the victim's oblique statement, there is nothing in U.M.'s testimony at the preliminary hearing to indicate that she had read Olivia Fontenot's report, and she never elaborated about who she was referring to as having misquoted her. Furthermore, U.M. was subsequently questioned about another statement that she gave to one Bill Hill.[2] She stated that she subsequently *1184 reviewed parts of what he had written and found that there were inaccuracies. It is evident that U.M. may have been commenting on Bill Hill's report or may have been informed of the contents of Officer Fontenot's report by another party.
In any case, defendant fails to suggest the relative significance of whether or not U.M. had actually read Officer Fontenot's report. Indeed, there is no suggestion that U.M. provided false information to Officer Fontenot or that her trial testimony was contradicted by any previous statements.
Finally, defendant suggests that the victim was untruthful in another regard. During cross-examination of the victim, she testified that she had completed a written statement for Officer Fontenot. Officer Fontenot testified that she could not recall whether U.M. had given her a written statement, noting that it had been two years since she conducted the investigation. Officer Fontenot also stated that if U.M. had provided a written statement it would have been acknowledged in her report as having been placed into evidence and that there was no indication of such in her report. Officer Fontenot also testified that she believed that all of her communications with U.M. were oral. By contrast, U.M. testified that she recalled preparing the statement in Officer Fontenot's presence and recalled the color of the paper and how it was formatted, including the presence of an introductory paragraph and title.
The issue of whether U.M. did or did not provide a written statement was certainly not a central issue with regard to the guilt or innocence of the accused. In fact, it is difficult to place any particular relevance to the subject. Furthermore, the fact that there was no notation on the report reflecting a written statement is hardly dispositive on the issue. The record is certainly insufficient to indicate that U.M.'s testimony was untruthful in this regard.
In sum, defendant has failed to suggest by these three instances any meaningful basis from which this court could conclude that U.M.'s testimony was not worthy of belief or that a rational jury could not have found him guilty beyond a reasonable doubt. Furthermore, when, as here, there is conflicting testimony about factual matters, the resolution of which depends upon a determination of credibility of the witness, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078. The trier of fact determines the weight to be given the evidence presented. It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Rosiere, 488 So.2d 965 (La.1986). Absent clear evidence to the contrary, a trier of fact's determination as to the credibility of a witness will not be disturbed. State v. Vessell, 450 So.2d 938, 943 (La.1984). Viewing the totality of the evidence in the light most favorable to the State, the evidence was sufficient to convince a reasonable juror beyond a reasonable doubt that the defendant was guilty of indecent behavior with a juvenile. The assignment of error lacks merit.

THIRD ASSIGNMENT OF ERROR
Defendant alleges that the trial court erred in sustaining the state's objection after defense counsel asked the victim whether she had retained a civil attorney. Defendant alleges that he was denied the opportunity to demonstrate that the victim had a vested interest in the outcome of the trial, and that his Sixth Amendment right to cross-examine the victim in this regard was unfairly prejudiced. During cross-examination *1185 of the victim, the following dialogue occurred:
Mr. Harris: Ma'am did you tellyou stated at the Preliminary Hearing that you hired a Civil attorney; is that correct?
Ms. Casey (A.D.A.): Objection.
Mr. Blackburn (A.D.A.): Objection.
The Court: Sustained.
Mr. Harris: Please note my objection.
The Court: Objection noted.
The Sixth Amendment to the United States Constitution and Article 1, Section 16 of the 1974 Louisiana Constitution guarantee the right of an accused in a criminal prosecution to confront the witnesses against him. Intrinsic to the right of confrontation is the right of cross-examination. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Under both Constitutions, the exposure of a witness's motivation is a proper right of crossexamination. State v. Brady, 381 So.2d 819 (La.1980).
Article 607 of the Louisiana Code of Evidence provides in pertinent part that:
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
In State v. Kellogg, 350 So.2d 656, 658 (La.1977), the Louisiana Supreme Court reversed the defendant's conviction after the trial court sustained an objection by the state to defense counsel's attempt to question the two victims about a civil suit they had filed against the defendant arising out of the incident in question. The court stated:
Our jurisprudence permits full crossexamination in order to expose any bias or interest of the witness which might influence his perceptions or color his testimony. E.g. State v. Robinson, 337 So.2d 1168 (La.1976); State v. Lewis, 328 So.2d 75 (La.1976). Specifically our cases have permitted counsel to inquire into the existence of a civil suit involving the witness or the possibility of civil liability on the part of the witness when such facts indicate that the witness has an interest in the criminal case or is otherwise not totally impartial. State v. Nolan, 341 So.2d 885 (La.1977); State v. Randolph, 334 So.2d 687 (La.1976); State v. White, 206 La. 744, 20 So.2d 10 (1944).
In discussing the necessity for reversal, the court stated:
It is the possibility of gain or loss dependent upon the witness' testimony which reveals partiality and interest. Thus, defendant is entitled to have the jury consider the fact that the testimony of the [victims] might have been colored because their testimony could affect the merits of their civil claim. The fact that the [victims] could possibly damage themselves by testifying to facts inconsistent with the factual basis of the civil claim reveals that they might have a motive to falsify, or that their testimony may not be wholly correct. Since the evidence of the existence of the suit may tend to show bias or interest, it was evidence which the jury was entitled to consider. Due to the close factual dispute and the limited number of eyewitnesses, we cannot say that the omission of this important evidence did not substantially prejudice the accused.
Likewise, in State v. Berry, 94-249 (La. App. 5 Cir. 10/25/94), 645 So.2d 757, the court, citing State v. Kellogg, reversed the conviction after the defendant was prohibited from questioning the victim regarding having retained an attorney in an apparent effort to make a claim for civil damages. The court found that the ruling precluded the defense from questioning as to possible bias or interest of the alleged victim. *1186 The facts of the case were summarized by the court as follows:
The defendant and the victim, Diana Gamponia, had known each other for several years, had dated for seven or eight months and had lived together, but had broken up several weeks before the incident herein. The victim was injured when she fell out of a moving vehicle being driven by the defendant. The dispute at trial was whether the defendant punched the victim and shoved her out of the moving vehicle, or whether she voluntarily jumped out and thereby sustained all her injuries.
The court assessed the impact of the error on the trial as follows:
Gamponia's [the victim] testimony was crucial to the prosecution's case; her testimony was not cumulative, because the only eyewitnesses were she and the defendant; except for her bruises and swollen left eye, there was no other evidence which corroborated her testimony as to defendant's actions while she was in the truck with him; the trial judge's ruling did not permit defense counsel further latitude in questioning for bias or interest; and the prosecution's case for second-degree battery rested almost entirely on the credibility of Gamponia.
See also, State v. Quatrevingt, 617 So.2d 484 (La.App. 4th Cir.1992) wherein we upheld the defense counsel's questioning of existence of a lawsuit, but did not allow him to delve into its details.
Sixth Amendment confrontation errors are subject to harmless error analysis, as the court conducted in State v. Berry. The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). Factors to be considered by the reviewing court include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438; State v. Wille, 559 So.2d 1321, 1332 (La.1990).
As in State v. Berry, the state's case rested entirely on the credibility of U.M. There was no corroborating evidence other than the surveillance video, which itself failed to substantiate the defendant's alleged actions inside the Wendy's. The State did not present the testimony of the first reporter, U.M.'s teacher. The defendant, who had no apparent previous criminal record, testified in his own behalf. The defense was unable to question whether the victim had retained a civil attorney, let alone filed a lawsuit. Because the evidence presented forced the jury to render its decision solely on the credibility of the two parties, the prosecution cannot establish beyond a reasonable doubt that the error did not contribute to the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). This assignment of error has merit.

CONCLUSION
For the foregoing reasons, the defendant's conviction is reversed and we remand this matter to the trial court.
REVERSED AND REMANDED
NOTES
[1] Due to the nature of the offense, the victim's initials have been used.
[2] The record does not reflect the identity of Bill Hill.