MAX N. TOBIAS, JR., Judge.
bln this personal injury action, the plaintiff, Tina Ladner (“Ms. Ladner”), appeals from a judgment rendered in her favor and against the defendant, Nobel Insurance Company (“Nobel”), seeking an increase in general and special damages. For the reasons that follow, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This suit arises out of an automobile accident that occurred on 27 September 2000 in Chalmette, Louisiana. Ms. Ladner was riding as a guest passenger in an *1100 automobile driven by Robin Alphonso (“Ms. Alphonso”) when a two-ear collision occurred. Lisa Leitz was driving the second automobile, but was not made a party to this action. Nobel provided a policy of insurance for the negligence of Ms. Alphonso. On 7 August 2001, Ms. Ladner filed suit against Ms. Alphonso and Nobel.[1]
Ms. Ladner was the only live witness to testify at trial. The remaining witnesses testified by deposition by stipulation of the parties. On 12 July 2005, the 12trial court rendered judgment and incorporated therein reasons therefor,[2] ruling in favor of Ms. Ladner and against Ms. Alphonso and GEICO, and awarding Ms. Ladner damages totaling $9,969.65. The trial court found Ms. Alphonso solely at fault for the accident. The finding of fault has not been appealed and is now final. Ms. Ladner filed a motion to correct the judgment or alternatively for a new trial on 22 July 2005, asserting judgment should not have been rendered against GEICO, a previously dismissed party. Responding to the motion, on 25 July 2005, the court issued an amended judgment casting Nobel in judgment in lieu of GEICO.
Ms. Ladner timely appealed seeking an increase in the award of general and special damages.

DISCUSSION

Ms. Ladner asserts that the trial court erred: (1) in relying on evidence outside the record to reject the testimony of Ms. Ladner’s treating physician; (2) in failing to award the full amount of proven medical specials, where Ms. Ladner did not incur the expenses in bad faith; and (3) alternatively, in abusing its discretion by awarding an unreasonably low general damage award, and by erroneously rejecting Ms. Ladner’s proven special damages, including loss of earning capacity.
I.
Ms. Ladner contends the trial court committed legal error by relying upon facts not in evidence to discount the testimony of James Dyess, M.D. Specifically, she points out statements made by the trial court — not in its judgment, but in its Jjreasons therefor — -wherein the trial court questioned Dr. Dyess’ practice of prescribing pain medication for any purpose requested by his patients. Thus, the issue before us is whether, based on the entirety of the record, the trial court was manifestly erroneous in awarding only $9,969.65 to Ms. Ladner.[3] We find that the trial court was not manifestly erroneous in its determination.[4]
*1101 First, in its incorporated reasons for judgment, the trial judge noted numerous inconsistencies in Ms. Ladner’s testimony regarding facts of the accident and her injuries and medical treatment. Because of these inconsistencies, the trial court chose not to credit Ms. Ladner’s testimony stating, “This often confusing and contradictory testimony from plaintiff regarding the facts of the accident would be present in much of the Plaintiffs testimony regarding her medical history and consequences of the accident challenging her credibility and her entire testimony ... which this Court disregards.... ”
Next, the record is replete with evidence that Dr. Dyess prescribed large quantities of narcotic pain medications to Ms. Ladner over a four-year period of time without any objective finding to substantiate her complaints.[5] The record establishes that Ms. Ladner simultaneously procured pain medication (Vicodin) from other physicians for other ailments without revealing to the doctors that she |4was receiving the same medication from Dr. Dyess; similarly she did not disclose to Dr. Dyess that she was receiving medications from other physicians.[6] In addition, the record further establishes that Ms. Ladner was not forthright in providing accurate information to her physicians, particularly Dr. Dyess, relative to her pre-accident and post accident medical condition and limitations. Accordingly, we find that the trial court was well within its discretion to reject Dr. Dyess’ medical opinion regarding Ms. Ladner’s alleged injuries from the subject accident. Where conflicting testimony exists regarding factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight of the evidence, not the sufficiency. State v. Bowens, 03-1408, p. 10 (La.App. 4 Cir. 3/31/04), 871 So.2d 1178, 1184, citing, State v. Allen, 94-1895 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078. Thus, we find that the alleged “extra-judicial evidence” that the trial court relied upon in reviewing Dr. Dyess’ testimony did not materially affect the outcome of this case. In short, sufficient evidence exists of record to establish the manner in which Dr. Dyess treated Ms. Ladner (ie., with pain killers for every complaint regardless of the existence of objective findings), separate and apart from what the trial judge may have gleaned or considered from other cases where Dr. Dyess administered similar treatment.
It is well-settled that when findings are based upon the credibility of witnesses (fact and/or expert), the manifest error/clearly wrong standard demands great deference to the trier of fact’s findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990). The trier of fact may also choose to reject all of the ^testimony of any witness or may believe and accept any part or parts of a witness’ testimony and refuse to accept any other part or parts thereof. Temple v. Schwegmann Giant Super Markets, 95-2491, pp. 4-5 (La.App. 4 Cir. 7/10/96), 677 So.2d 1103, 1105-1106. Further, the trial court is permitted to make credibility determinations from de *1102 position testimony just as from live testimony, and an appellate court views those determinations using the manifest error standard. Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Maldonado v. Louisiana Superdome Com’n, 95-2490, p. 5 (La.App. 4 Cir. 1/22/97), 687 So.2d 1087, 1091. Accordingly, we find that the trial court did not abuse its discretion in discrediting the testimony of Ms. Ladner and/or Dr. Dyess in determining the extent of Ms. Ladner’s injuries resulting from the subject accident.
II.
In her second assignment of error, Ms. Ladner contends the trial court failed to award her the full amount of her medical expenses, where the evidence failed to establish that she incurred the expenses in bad faith. Specifically, Ms. Ladner asserts that the trial court decided to reduce her medical specials award based on its preconceived misperceptions of Dr. Dyess, and that it is legal error to award partial medical specials without a finding that she treated in bad faith. We disagree.
A trial court is vested with vast discretion in determining whether a plaintiffs injuries are causally related to an accident. It is well-settled that a personal injury plaintiff bears the burden of establishing medical causation by a preponderance of the evidence. Devlin v. Westinghouse Electric Corp., 96-484, p. 15 (La.App. 5 Cir. 12/11/96), 686 So.2d 920, 928. The trier of fact is not bound to accept a plaintiffs perception, or any other witness’ perception, of the nature and extent of the injuries sustained. Phiratsamy v. Pipes, 27,209, p. 4 (La.App.6 2 Cir. 8/23/95), 660 So.2d 172, 175; see also Gladney v. May, 29,373 (La.App. 2 Cir. 5/7/97), 697 So.2d 1022. Moreover, a factfinder possesses vast discretion in awarding general and special damages. At issue is whether the trial court abused its discretion in determining what damages were caused by the accident at issue and in awarding general and special damages based upon that determination.[7]
Ms. Ladner contends that the trial court failed to award all of the past medical expenses incurred, totaling nearly $15,000.00, based upon its unfavorable opinion of Dr. Dyess. We disagree. However, the record is replete with evidence that Ms. Ladner’s injuries from this accident were minor in nature and of a limited duration. In fact, Dr. Dyess discharged Ms. Ladner on at least two occasions — the first being only 7⅜ months after commencing treatment — finding that she had reach maximum medical improvement, only to have her return for “treatment” and seeking additional prescriptions for narcotic pain medication. Further, the evidence shows that Ms. Ladner was treated for a drug overdose and underwent drug rehabilitation during the same timeframe that she was being treated by Dr. Dyess. Evidence reveals that Ms. Ladner was involved in a subsequent automobile accident and complained of similar back and neck injuries. This evidence, coupled with the numerous discrepancies in Ms. Ladner’s trial testimony, call into question her veracity,[8] and we find ample grounds in the *1103 record to support the trial court’s | conclusion that not all of the medical expenses incurred by Ms. Ladner were related to treatment for the injuries she claims to have received as a result of the subject accident. The trial court awarded reimbursement of medical expenses incurred by Ms. Ladner between the time she initially sought treatment in November 2000, through the date she was first discharged by Dr. Dyess in June 2001. We find this award was not an abuse of the trial court’s discretion. This assignment of error is without merit.
III.
In the alternative, Ms. Ladner contends that the trial court abused its discretion in the assessment of damages by awarding an unreasonably low general damage award in light of her four plus years of treatment, and by rejecting Ms. Ladner’s allegedly proven special damages, including loss of earning capacity. Specifically, Ms. Ladner contends that the trial court failed to apply the Housley presumption of causation regarding her injuries. In Housley v. Cense, 579 So.2d 973 (La.1991), the Supreme Court held that a plaintiffs disability is presumed to have resulted from an accident, if: (1) the plaintiff was in good health before the accident; (2) that commencing with the accident, the symptoms of the plaintiffs disabling condition appeared and continuously manifested themselves afterwards; and (3) the medical evidence shows there is a “reasonable possibility” of a causal connection between the accident and the plaintiffs disabling condition. Id. at 980.
We find that the presumption does not apply, even applying the Housley factors to the case sub judice, based on the totality of the record. No significant |sevidence exists suggesting that Ms. Lad-ner was, in fact, in good health prior to the accident. Medical records indicate that Ms. Ladner had been treated for back problems, syncope, two heart attacks, two strokes, and other physical complaints during the years preceding the accident.
In evaluating her complaints of pain and need for treatment following the accident, the trial court stated the following:
[Ms. Ladner] denies any prior problems with her back and relates all of her medical problems to this accident. She has amassed medical bills of over $15,000.00, mostly in the prescription of and administration of narcotic pain medication.
Medical records of Chalmette Medical Center show that Plaintiff sought medical attention for back pain in the year before the accident. The x-rays taken then demonstrate a congenital or developmental condition in her lumbar spine and spondylolisthesis or spondylosis. On April 21, 2001, MRI examination reveals a slight bulging of disc interspaces in the lumbar spine of a degenerative origin. She had suffered two heart attacks and two strokes, according to medical records that were introduced by Defendants, which she testified she was unaware of, notwithstanding those diagnoses and her treatment for those maladies.
*1104 Because of persistent complaints, Doctor Dyess twice recommended a consultation by an orthopedist or nuerosur-geon [sic]. Plaintiff did not schedule or appear at a nuerosurgeon [sic] for consult, but saw Doctor Johnson, an orthopedist on one occasion three years after the accident. While Plaintiff asserts that she suffered over three years for her condition resulting in a slightly bulging intervertebral disc space, the evidence of her treatment and medical history do not support such a finding.
Ms. Ladner’s credibility regarding the facts of the accident, her medical history, and the consequences of the accident, was seriously called into question — to the extent that the trial judge disregarded her testimony altogether. Thus, we do not find, based on the record as a whole, that Ms. Ladner established that her | adisabling condition appeared and continuously manifested itself after the accident. Nor can we say or find that, because of her credibility issues, Ms. Ladner established a “reasonable probability” of a causal connection between her alleged injuries and her alleged current disability. Accordingly, Housley does not apply and we find that no presumption that a causal connection exists between Ms. Ladner’s alleged injuries and all of the treatment she received subsequent to the accident.
Next, Ms. Ladner contends that the trial court’s low damage award disregards the well-settled “treating physician” presumption by accepting the testimony of the independent medical examination (“IME”) physician, Gordon Nutik, M.D., over Ms. Ladner’s treating physician, Dr. Dyess. While this court has generally followed the jurisprudential rule that a treating physician’s opinion is given more weight than a non-treating physician’s, courts applying that doctrine have held that the treating physician’s testimony is not irrebuttable, as the trier of fact is required to weigh the testimony of all medical witnesses. The proper inquiry is whether, based on the totality of the record, the factfinder was manifestly erroneous in accepting the expert testimony presented by Nobel’s IME physician, Dr. Nutik, over that presented by Ms. Ladner’s treating physician, Dr. Dyess. See Miller v. Clout, 03-0091 (La.10/21/03), 857 So.2d 458. Regarding its reliance on Dr. Nutik’s testimony over that of Dr. Dyess, the trial court explained:
[T]his Court finds Plaintiff did receive some injuries as a result of the automobile accident of September 27, 2000, albeit relatively minor in nature and more of the nature of an aggravation of a preexisting physical condition. Doctor Nu-tik testified these types of injuries generally resolve themselves in three months. In light of other testimony, including that of Doctor Dyess relating all the complaints to the accident, this Court finds the testimony of Doctor Nu-tik as especially | ^important and relevant. This Court has had Doctor Dyess testify before it, by deposition and in open court and finds that treatment administered by him of simply providing pain medication for whatever the purposes the patient continues to request it as questionable at least and highly suspect. In this instance, the Court does not grant the weight to his medical testimony as that generally afforded a treating physician.
During the course of her treatment by Doctor Dyess, he prescribed narcotic medications and treated her with approximately 4000 doses of Vicodin, 3000 doses of Soma together with other narcotic drugs such as Xanax and Hydroco-done and other medications. Additionally, she was prescribed these same medications and/or similar drugs by other physicians for her various ailments, *1105 unrelated to this automobile accident, in addition to obtaining these or other narcotics that were prescribed for her friends. It is of small wonder that she was twice treated for drug overdoses at Chalmette Medical Center and an additional seeking of medical attention for fainting, both of which she denied having occurred to her recollection. She additionally admitted to intermittent marijuana use.
Though the medical records of Doctor Dyess relate her condition and his treatment for that condition to the automobile accident of September 27, 2000, these same records also show that Plaintiff was temporarily discharged from Doctor Dyess’ care in June 2001 as having reached maximum medical improvement. In the months preceding June 2001, Plaintiff was seeing Doctor Dyess in office visits at four-week intervals since November 2000 until June 2000[sic].
The trial court is vested with vast discretion to credit or discredit the testimony and opinions of any witnesses, including that of a treating physician. In the case at bar, the trial court considered the testimony of both Dr. Dyess and Dr. Nutik and was required to make findings based on credibility determinations. The trial court credited Dr. Nutik’s testimony and rejected Ms. Ladner’s version of events and the explanation of treatment and opinions of Dr. Dyess. In short, the trial court chose to rely upon the testimony of Dr. Nutik, which was within the Incourt’s discretion. Reasonable evaluations of credibility and reasonable inferences of fact cannot be disturbed upon review where conflict exists in the testimony. Stobart v. State, Dept. of Transp. & Development, 617 So.2d 880, 888 (La.1993). Accordingly, we find it was well within the trial court’s discretion to credit the testimony of Dr. Nutik over that of Dr. Dyess.
Considering all of the evidence presented, the trial court awarded Ms. Ladner $7,500.00 in general damages, including pain and suffering, mental distress, and physical impairment, for what the trial judge essentially determined to be a 7½-month soft-tissue injury.[9] The court further awarded a total of $2,469.65 for the medical services provided by Dr. Dyess, “concluding the reimbursements to coincide with the June medical discharge from Dr. Dyess’ care.” Based upon our review of the record evidence, we do not find that the trial court abused its discretion in awarding the general damages and medical specials, which it did.
Ms. Ladner further contends that the trial judge erred in rejecting special damages for her loss of earning capacity. The trial court stated:
The Court rejects any and all other claims for general damages and special damages, including medical expenses for doctor’s charges and drugs. The Court further rejects any claim for lost wages or household assistance, since same were not proven nor justified.
Because Ms. Ladner failed to brief her claim for loss of earning capacity, we treat that portion of her appeal as abandoned. See Rule 2-12.4 of the Uniform Rules, Courts of Appeal, which states, in pertinent part, that “... [a]ll specifications or *1106 assignments of error much be briefed. The court may consider as |12abandoned any specification of error which has not been briefed.... ” Therefore, Ms. Ladner’s appeal on this issue is dismissed.

CONCLUSION

For the foregoing reasons, the trial court judgment is affirmed.

AFFIRMED.

BONIN, J., concurs with reasons.

. Another defendant, Government Employees Insurance Company, Inc. (''GEICO”), was dismissed prior to trial.

. We note that a trial court's judgment and reasons for judgment are supposed to be two separate and distinct documents; appeals are taken from the judgment only, not the written reasons for that judgment. See La. C.C.P. art. 1918.

. We note that both the original and amended judgments awarded $9,969.65, "comprised of the elements and general and special damages as stated above.” In its incorporated reasons for judgment, the trial judge separated the elements of damages as follows: $7,500.00 in general damages, $2,405.00 as reimbursement for medical services of Dr. Dyess, and $465.05 "concluding the reimbursements.... ” These actually total $10,369.05. Because the judgment controls, and no party has appealed the miscalculation, we address only the award of $9,969.65.

.Even if this court were to find that the trial court committed legal error by referring to facts not in evidence (i.e., comments about the testimony of Dr. Dyess in other cases), we conclude that such an error is harmless because, when viewed against the record as a whole, it does not affect the outcome of the case.

. The record shows that over a 4'¿-year period, Dr. Dyess prescribed Ms. Ladner over 4,000 Vicodin, 3,000 Soma, and other medications. Simultaneously, Ms. Ladner was using marijuana. The record reveals that Ms. Ladner was simultaneously procuring and ingesting similar medications received from her friends and did not disclose this fact to her physicians.

. We note Ms. Ladner deigned doing so.

. Ms. Ladner erroneously asserts that this court should review the trial court’s ruling on causation and its determination of damages de novo based upon "legal error;” she fails to provide any authority for this proposition. Abuse of discretion and manifest error are the proper standards for review of causation and damages.

. Specifically, medical records were produced establishing that Ms. Ladner had suffered two prior heart attacks and two strokes, yet at trial she denied knowledge of this pre-acci- *1103 dent medical history. She denied any preexisting back problems; medical records revealed prior treatment for back pain. She denied ever having been diagnosed with poly-substance abuse, yet the medical records indicate that diagnosis after she presented to a hospital in a comatose state. Evidence confirmed Ms. Ladner obtained large quantities of narcotic medication simultaneously from various treating physicians as well as friends, but denied doing so. And Ms. Ladner was an admitted marijuana user, yet she did not divulge her recreational drug use to the physicians prescribing narcotic medication.

. The medical records show that Ms. Ladner first sought treatment from Dr. Dyess in November 2000, and was initially discharged from his care as having reached maximum medical improvement in June 2001. Based on Dr. Nutik's testimony that injuries such as those complained of by Ms. Ladner should be resolved within three months, the trial court apparently determined that this Ms. Ladner’s injuries from the accident would have been resolved no later than her initial discharge by Dr. Dyess in June 2001.